## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| **PHILADELPHIA NEWSPAPERS LLC,** *ET AL.* | : | |
| **Debtors.** | : | **Case No. 09-11204 (JKF)** |
| _____ | | |
| **PHILADELPHIA NEWSPAPERS LLC,** *ET AL.* | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **ALYCIA LANE,** *ET AL.,* | : | |
| **Defendants.** | : | **Adversary No. 09-0085 (JKF)** |
| _____ | | |

## <u>MEMORANDUM OPINION</u>

BY:    JEAN K. FITZSIMON
       United States Bankruptcy Judge

The Debtors have filed a Motion for Clarification of Scope of Preliminary

Injunction (the "Motion"), seeking to make clear that the preliminary injunction

entered by the Court on May 8, 2009 (<u>see</u> docket entry no. 105) is a reciprocal

injunction, barring not only the non-debtor Defendants in this adversary

proceeding, but also non-debtor reporters, editors and other employees from

actively pursuing discovery or otherwise participating in the underlying litigation.

One of the defendants in this proceeding, Alycia Lane, opposes the Debtors'

Motion (see docket entries nos. 163 and 171) and argues that the relief sought is

neither within the Court's power nor appropriate.  For the reasons stated, the

Court will grant the Motion and make clear that the injunction entered on May 8th

was intended to be a reciprocal injunction, enjoining the Defendants in this

adversary as well as the Non-Debtors[1] in the underlying litigation.[2]

# I. BACKGROUND

***The Adversary Proceeding***: ***Initial Filings***

The Debtors, who own and operate various print and on-line sources of

media, including the Philadelphia Inquirer and the Philadelphia Daily News, filed

for Chapter 11 bankruptcy protection on February 22, 2009.[3]  On March 23, 2009,

Philadelphia Newspapers, LLC filed this adversary complaint and a Motion for

Preliminary Injunction and a Temporary Restraining Order against various

defendants, including Alycia Lane (see docket entry no. 2).  The Debtors

---

[1]  "Non-Debtors" is defined for purposes of this Opinion to mean Brien Tierney, the Debtors' C.E.O. and Publisher, the Debtors' reporters, editors, and other of the Debtors' employees.

[2]  At the July 6, 2009 hearing on these matters, the Court expressed concern that the Debtors' Motion for Clarification did not present a case or controversy and that the Court would be issuing an advisory opinion if it were to rule on it.  For this reason, the Court will treat the Motion as a motion to reconsider.  A court may grant a motion to reconsider if the moving party shows either: (1) an intervening change in the controlling law; (2) the existence of new evidence that was not available when the court issued the order; or (3) the need to correct a clear error of law or fact or to prevent manifest justice. Langan Eng'g and Envtl. Services, Inv. v. Greenwich Ins. Co., 2008 WL 4330048, at *1 (D.N.J. Sept. 17, 2008).  See also Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).
Here, the new evidence presented by the Debtors warranting consideration of both the May 8th injunction and the injunction issued on July 6, 2009, as discussed below, is the representations being made to the state court by Ms. Lane's attorney regarding the scope of the injunction.

[3]  Nine cases are being jointly administered under case number 09-11204.

amended their Complaint on May 1st and again on May 8th (see docket entries

nos. 61 and 102).  The relief sought by the Debtors remains the same, namely

the extension of the automatic stay pursuant to 11 U.S.C. § 362(a) and injunctive

relief pursuant to 11 U.S.C. § 105(a).  Id.  One of the defendants in this adversary

is Alycia Lane; the matter of Lane v. CBS Broadcasting, Inc. t/a KYW TV-3, et. al

is currently pending in the Court of Common Pleas for Philadelphia County (the

"Lane Case").  The Lane Case includes claims against Dan Gross, a reporter for

the Philadelphia Daily News who is not a Debtor.[4]  (The Lane Case is discussed

below.)

A hearing was held regarding the relief sought in this adversary proceeding

on April 6, 2009 and a Temporary Restraining Order was entered on April 14,

2009 (see docket entry no. 25) (the "April 14th Order").  At the April 6th hearing,

the Court was asked about the scope of the Temporary Restraining Order and

responded "it does seem to me that what is good for the goose is definitely good

for the gander, and to the extent that the stay is being applied to this litigation it is

being applied to all the parties who are at least before me here today to that

litigation."  (Transcript of April 6, 2009 hearing at 98).  (See Exhibit A to the

Motion).  With the exception of two individual cases (titled the "Robinson and

---

[4] Philadelphia Media Holdings, LLC ("PMH") is also a Defendant in the Lane Case.  It filed for
Chapter 11 bankruptcy protection in this Court on June 10, 2009 and is, therefore, now a debtor.  Ms.
Lane removed PMH as a Defendant once it filed for bankruptcy protection.

Hueitt Matters") the April 14th Order scheduled a further hearing on the Debtors'

request for a preliminary injunction for May 7, 2009.  (See docket entry no. 25).

### The May 7th Hearing

On May 7, 2009, an evidentiary hearing was held on the Debtors' request

for a preliminary injunction (the "May 7th Hearing").  Following the May 7th

Hearing, on May 8, 2009, an Order was entered, granting the relief requested.

(See docket entry no. 105) ("the May 8th Order").  The May 8th Order states, in

relevant part:

> Pursuant to sections 105(a) and 362(a) of the Bankruptcy Code,
> effective immediately and for a period of sixty (60) days from the
> date of entry of this order, the scope of the automatic stay is
> extended to include the Non-Debtors, and Defendants are enjoined
> from continuing any action or legal proceeding (including, without
> limitation, any judicial quasi-judicial administrative or regulatory
> action, proceeding or process whatsoever), by way of direct claim,
> counterclaim, cross claim, appeal or any other action against Non-
> Debtors, based upon the matters encompassed within the Second
> Amended Complaint, as may be further amended.

May 8th Order at 3.

While the Court made an oral ruling at the conclusion of the May 7th

Hearing (which, as will be discussed below, has been affirmed by the District

Court), because the precise nature and scope of that ruling is now in dispute, it is

necessary to revisit the reasoning behind the May 8th Order.  The discussion

4

below represents the Court's findings of fact and conclusions of law regarding

that Order.

The Debtors argued at the May 7th Hearing that a temporary injunction is

necessary to its reorganization efforts both because the non-debtors and the

Debtors share an identity such that a judgment against its employees would in

essence be a judgment against the Debtors and because the third-party actions

will have an adverse impact on the Debtors' ability to reorganize.  (Transcript of

May 7, 2009 hearing, docket entry no.111 (hereinafter "Tr.") at 12-15).  The

majority of the litigation pending against the Debtors are defamation and invasion

of privacy cases.  (Tr. at 10).  Scott Baker, General Counsel for the Debtors,

testified at the May 7th Hearing that he is very involved in the Debtors'

reorganization efforts and spends "upwards of 80 percent of [his] time on

restructuring efforts".  (Tr. at 22; 25; 33).

Mr. Baker testified that when an employee of the Newspaper is sued, the

Debtors generally indemnify the employee.  (Tr. at 26).  Mr. Baker cited many

reasons for the Debtors' practice of indemnification, including: 1) the language of

the Amended and Restated Operating Agreement (the "Operating Agreement");[5]

---

[5] The Amended and Restated Operating Agreement states, in relevant portion, "the Company will
indemnify any person who is or was . . . a Member, Manager, officer, employee or other agent of the
Company . . . from and against any and all claims, demands and expenses . . . incurred by the
Indemnittee by reason of the fact that such person was a Member or Manger or, while serving as a
Member or Manager, is or was at the request of the Company also serving as a manager, director,
employee, officer, or agent of another entity. . . .  The right of indemnification created by this subparagraph
is a contract right enforceable by an Indemnitee against the Company, and it is exclusive of any other
rights to which an Indemnitee may otherwise be entitled."  ¶8b.; Exhibit CSMI1.  Exhibits were admitted
(continued...)

2) historically the Debtor has provided indemnification to its employees; and

3) common law theories of principal/agent, respondeat superior, and vicarious

liability.  (Tr. 26-7).  Mr. Baker further testified that the Newspaper would "have a

very difficult time keeping our reporters on staff if we did not provide

indemnification or defense costs to them."  (Tr. at 53).  (See also Tierney

testimony at Tr. 69).

In terms of the cost of the litigation of the underlying lawsuits, Mr. Baker

testified that the budget for each case typically is somewhere between $140,000

to $225,000 through the summary judgment stage.  (Tr. at 29-30).  While there

are insurance policies that would cover certain cases, the general retention level

(the amount the Debtor is required to expend before the insurance is applicable)

is $750,000 for cases involving the Philadelphia Inquirer, $500,000 for cases

involving the Daily News and $100,000 for cases involving other publications.

(Tr. at 30-31).

Brian Tierney, the C.E.O. for the Debtor Philadelphia Newspaper, also

retains "primary focus" on the Debtors' reorganization efforts.  (Tr. at 25).  He

testified that time spent on litigation and depositions has not been a "huge

[5](...continued)
into evidence without objection following the May 7th Hearing.
      Counsel for certain Defendants argued at the May 7th Hearing that a proper interpretation of the
Operating Agreement shows that the document actually does not provide indemnification for the Debtors'
employees.  See e.g., Tr. at 74; 81.  However, as the Court made clear at the May 7th Hearing, the issue
of whether the Operating Agreement succeeds in indemnifying the Debtors' employees is not presently
before the Court ("as you well know, in a preliminary injunction context, I'm not deciding the ultimate
question").  Tr. at 75.  The District Court also declined to construe the indemnification clause.  In re
Philadelphia Newspapers, LLC, ___, B.R. ___, 2009 WL 1911785, at *4 (E.D. Pa. July 2, 2009).

6

distraction," but that depositions in connection to these lawsuits do take a lot of time.  (Tr. at 61-62).  Mr. Tierney noted that it would be his "assumption that all of our employees, including [himself] would be indemnified and insured."  (Tr. at 68).

Gary Schildhorn, counsel for the Official Unsecured Creditors Committee, spoke in support of a 60 day injunction for what the Committee considers "very important and reasonable grounds," including the need for the Debtors' management to be free to concentrate on the reorganization of the Newspaper and public policy concerns, considering the Newspaper employs thousands of people in the city.  (Tr. at 91-2).

Upon the conclusion of the evidence and testimony, the Court made an oral ruling at the May 7th hearing.  The Court held that, because all four prongs of the test for the issuance of a preliminary injunction had been met, the Debtors' motion for a preliminary injunction would be granted for sixty (60) days.  In order for a court to issue a preliminary injunction, the moving party must show: 1) a reasonable probability of eventual success in the litigation; and 2) that it will be irreparably injured if relief is not granted to prevent a change in the status quo. Once these requirements are met, the Court should consider 3) the possibility of harm to other interested persons from the grant or denial of the injunction; and 4) that the issuance of the injunction is in the public interest.  <u>Delaware River Port Authority et al. v. Transamerican Trailer Transport, Inc.</u>, 501 F.2d 917, 920 (3d Cir. 1974); <u>Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly</u>, 309 F.3d 144, 157 (3d

Cir. 2002).  See also In re Monroe Well Service, Inc., 67 B.R. 746 , 752-3 (Bankr. E.D. Pa. 1986) (outlining a similar test as applies to the issuance of an injunction in a Chapter 11 case).

The Court addressed the specific way in which the Debtors satisfied the four-prong test outlined above at the May 7th Hearing.  First, there was no reason to believe at that point that the Debtors would not be able successfully to reorganize, given that they had been moving forward with this case at a reasonable pace and had been able to settle many if not all of the contested matters that had come before the Court.[6]

Second, an irreparable injury might well occur if an injunction were not issued.  Scott Baker and Brien Tierney, whose focus at the time needed to be on the critical reorganization of the Debtors, would be distracted from this task if the underlying litigation were permitted to proceed.  It was the time to focus on reorganization, and management was needed for this.  In addition, given that the Debtors had no money with which to defend these lawsuits,[7] the Debtors could suffer a loss of faith with their employees if the injunction were not issued.

While the Court was not unsympathetic to the concerns of the Defendants in this adversary, the balance of the harms tipped in favor of the Debtors here.

---

[6] "[A] reasonable probability of eventual success in the litigation . . . is equated to the ability to successfully reorganize the debtors." In re Philadelphia Newspapers, LLC, ___, B.R. ___, 2009 WL 1911785, at *6 (E.D. Pa. July 2, 2009) (citing Monroe Well, 67 B.R. 756, 752-3 (Bankr. E.D. Pa. 1986)).

[7] The current cash collateral order does not provide funding for such litigation expenses.  (See docket entry no. 829.)

8

The Court found that the underlying lawsuits would be stayed for a relatively short

period of time and that the delay would have a minimal impact on those cases.

The Court further found the question of the whether the injunction would be

in the public interest weighed in favor of the Debtors as well.  The public has an

interest in seeing a local institution of the substance and size of these Debtors

reorganize.  The Philadelphia Inquirer and the related entities employ many

thousands of people in this region.  This strong public interest in the successful

reorganization of these Debtors cannot be taken lightly.  Therefore, all four

factors of the Third Circuit test for the issuance of a preliminary injunction

weighed in favor of the Debtors' requested relief at the May 7th Hearing.  The

Court, therefore, granted the aforementioned and currently contested May 8th

Order, enjoining third-party litigation so that the Debtors' central management

may focus on reorganization.


***Events Following the May 7th Hearing: the District Court Opinion and this
Court's July 6th Order***

On May 18, 2009, Defendant Charter School Management, Inc. appealed

the May 8th Order granting the Debtors' Motion for a Preliminary Injunction (see

docket entry no. 119).  The District Court affirmed the May 8th Order on July 2,

2009.  See In re Philadelphia Newspapers, LLC, ___, B.R. ___, 2009 WL

1911785 (E.D. Pa. July 2, 2009).  Specifically, the District Court held that: 1) this

9

Court had jurisdiction to issue the injunction; 2) the Court properly extended the

§ 362(a) stay to non-debtors; and 3) it was within the Court's discretion to issue

an injunction pursuant to § 105(a).  See Id.

On June 10, 2009, while the May 8th Order was in effect and while the

appeal of that Order was pending before the District Court, the Debtors filed the

pending Motion - the Motion for Clarification of Scope of Preliminary Injunction

(docket entry no. 132).  Defendant Alycia Lane filed a Response and a Sur-Reply

to the Motion (and was the only Defendant to do so).  (See docket entries nos.

163 and 171).  On July 6, 2009, a hearing was held on the Motion for

Clarification.  Following oral argument, the matter was taken under advisement.

That same date, an evidentiary hearing was held and an Order was entered

continuing the preliminary inunction in this adversary until September 8, 2009.[8]

(See docket entry no. 174) ("the July 6th Order").

At the hearing on July 6, 2009, the Court heard testimony with regard to the

continuing need for the preliminary injunction.  Scott Baker again testified that it is

the Debtor's practice to indemnify its employees.  (Transcript of July 6th hearing

at 16-7 (hereinafter "July Tr.") (docket entry no.183).  Mr. Baker testified that

reorganization efforts take up "substantially all of [his] time." (July Tr. at 24).

Mr. Thayer, the Executive Vice President for Finance, testified that he spends "a

---

[8] The May 8th Order expired on its own terms on July 7, 2009.

considerable amount of [his] time" working on the plan of reorganization. Id. at 91.

After consideration of the testimony at the July 6th hearing, the Court found that "we have exactly the same situation almost 60 days later that we had in connection with the issuance of the preliminary injunction in the first case. That is, it was very early days in this case. There is nothing to indicate that this debtor is not going to be able to organize and come out the other end of this bankruptcy." July Tr. at 121. Although the Court remained "mindful" of the continuing harm to those who have been defamed, the Court found that the short length of the injunction sought and the fact that the circumstances had not substantially changed warranted continuing the May 8th Order for an additional 60 days. Id. at 123-5. The terms of the July 6th Order continuing the preliminary injunction are substantially similar to those of the May 8th Order. (See docket entry no.174.) The July 6th Order continued the preliminary injunction for an additional sixty (60) days. Id.


***The Lane Case and Events in the Lane Case Following the May 7th Hearing***

For purposes of this Opinion, it  is also important to have an understanding of the background of the Lane Case. That matter was filed in September 2008 against CBS Broadcasting, Inc. t/a KYW-TV, Michael Colleran, Lawrence Mendte, the Daily News, Philadelphia Media Holdings ("PMH") and Dan Gross, a

reporter for the Philadelphia Daily News.  The Lane Complaint contains a total of

18 counts, only four of which directly relate to the parties relevant here: Count X

seeks relief for unlawful interception and disclosure of electronic communications

against Gross, PMH and Philadelphia Newspapers ("PN"); Count XVI is an action

for invasion of privacy-intrusion upon seclusion against Gross, PN, and PMH;

Count XVII seeks relief for intentional infliction of emotional distress against

Mendte and Gross; and Count XVIII is a claim for civil conspiracy against KYW-

TV, Colleran, Mendte, Gross, PN, and PMH.  (<u>See</u> docket no. 188, Exhibit 1).[9]

The Daily News and PMH were dismissed as defendants from the Lane Case

following their filing of Chapter 11 bankruptcy in this court, but Gross remains a

party.  <u>See</u> Sur-Reply at 5.

On May 29, 2009, Paul Rosen, counsel for Alycia Lane, sent a letter to Dan

Gross and PMH's counsel suggesting that discovery may be obtained from these

Defendants, notwithstanding the fact that the May 8th Order imposed a

preliminary injunction on the Defendants, including Ms. Lane.  <u>See</u> Exhibit E to

the Motion (the "May 29th Letter").  In relevant portion the May 29th Letter reads:

> [T]here are no negative consequences to any other party resulting
> from the stay imposed as to Mr. Gross.  The bankruptcy stay does
> not preclude any party from taking Mr. Gross' testimony, obtaining
> other kinds of discovery from him, or otherwise dealing with the facts

---

[9] The Debtors filed a copy of the Complaint in the Lane Case on July 20, 2009 to "supplement the record."  <u>See</u> docket entry no. 188 at 2.  No party has objected to the Court's review of this material, though counsel for Ms. Lane did note at a hearing on July 21, 2009 that an Amended Complaint had been filed in the Lane Case on June 16, 2009.  However, it was not asserted that the Amended Complaint was substantively different from the Complaint placed on record in this adversary by the Debtors.

> of the case.  The stay does not preclude Mr. Gross or other persons
> at the Philadelphia Daily News from producing documents and
> appearing as witnesses.

While Mr. Rosen maintains that the May 8th Order permits him to proceed with

discovery in the Lane Case, he "has not scheduled a single deposition of any

party or third party in this case, and no depositions are presently scheduled."

Exhibit G to Motion at 9.  See also Response at 8 ("Lane has not sought *any*

discovery from the Daily News, PMH or Gross") (emphasis in original).

On May 6, 2009, a hearing was held in this Court on the Debtors' motion to

quash a subpoena issued by Lane that sought to compel Dan Gross to appear

and testify before the Court (the "Lane Subpoena").  (See docket entry no.760).

Following the hearing, the subpoena was withdrawn without prejudice.  (Docket

entry no. 90).

On June 1, 2009, CBS Broadcasting, Inc., and Michael Colleran, two of the

defendants in the Lane Case, filed an Emergency Motion for Stay of Proceedings,

requesting that the state court stay all the proceedings in the Lane Case based

on the May 8th Order.  This motion was denied on June 17, 2009 and the Lane

Case was removed from "deferred status."  Response at 7.


***The Parties' Arguments***

The Debtors' Motion for Clarification asks the Court to make clear that the

May 8th Order "imposes reciprocal prohibitions and prevents non-debtors . . . and

13

non-party employees of Debtors from actively pursuing discovery or defending themselves in cases to which the Preliminary Injunction applies." Motion at 1. Specifically, the Debtors wish to clarify, for example, that the non-debtors affected by the May 8th Order are not free to participate in discovery, file or join in preliminary objections, or to attend court conferences in the Lane matter. Motion at 2. The Debtors assert that if the Preliminary Injunction is not reciprocal, then the purpose of the injunction - namely to allow the Debtors space and time to concentrate on reorganization, and to prevent the Debtors from having to pay for the underlying litigation at this time - would be thwarted. Motion at 2; 9-10. The Debtors argue that the Court's power to issue the May 8th preliminary injunction order is derived from sections 362 and 105 of the Code. Reply at 4. Further, according to the Debtors, "the Court has the power under Section 105(a) to enjoin any party from taking discovery that will impose a substantial burden on Debtors' estates." Id. at 5.

Alycia Lane responds that the May 8th Order did not and could not preclude non-debtors from pursuing discovery because such an order would exceed the scope of section 362(a). Response at 9. Lane points out that while actions *against* a debtor are stayed in bankruptcy, actions *by* the debtor are not. Id. at 10. Ms. Lane asserts that the stay does not preclude a debtor from being compelled to participate in discovery. Id. She discounts the Debtors' argument regarding Section 105, suggesting that "the Debtors cannot assert that Section

14

105 permits this Court to preclude the Debtors from participating in the litigation."

Sur-Reply at 3.


# II. DISCUSSION

### *The Court has the Power to Enjoin Third Parties Pursuant to Section 105*

The first question the Court must address is whether it has the power to

issue a reciprocal injunction.  In other words, is a bankruptcy court, pursuant to

section 105 of the Code,[10] permitted to enjoin third parties from participating in

discovery?  Contrary to the contention of Alycia Lane, the answer to this question

is yes.  The law is clear that in some circumstances discretionary stays, beyond

the scope of section 362, are appropriate and that a court's power to issue such

injunctions stems from section 105 of the Code:

> The most notorious use of section 105 has been to seek to enjoin
> actions which, for one reason or another, are not stayed by the
> automatic stay of section 362.  Congress anticipated this use of
> section 105.  Section 362 covers those actions which are
> unthinkingly stayed; the range of potentially harmful actions to the
> estate, however, is much broader than that.  By vesting the
> bankruptcy court with injunctive powers, Congress provided the
> opportunity to examine, under traditional equitable guidelines, the
> desirability of enjoining some nondebtor actions.

2 Collier on Bankruptcy 105.03 (15th ed. 2004).  The district court that affirmed

this Court's granting of the preliminary injunction declared "[t]he power of the

---

[10] Section 105 states, in relevant portion, "[t]he court may issue any order, process, or judgment
that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

Court to stay actions against Non-Debtors, pursuant to section 105(a), is clear."

In re Philadelphia Newspapers, LLC, ___, B.R. ___, 2009 WL 1911785, at *6

(E.D. Pa. July 2, 2009).  See also A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994,

1003 (4th Cir. 1986) (quoting In re Johns-Manville Corp, 40 B.R. 219, 226

(D.C.N.Y. 1984)) (holding that a bankruptcy court has power under section 105 of

the Code to issue third-party injunctions, and in "the exercise of that authority the

Court may issue or extend stays to enjoin a variety of proceedings [including

discovery against the debtor or its officers and employees] which will have an

adverse impact on the Debtor's ability to formulate a Chapter 11 plan."); In re

Monroe Well Service, Inc., 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986) ("[T]he

bankruptcy court . . . has the power to issue injunctions under section 105 to

prevent significant harm to the estate in appropriate circumstances."); In re

Adelphia Communications Corp.,, 302 B.R. 439, 449 (Bankr. S.D.N.Y. 2003) ("[I]t

is well settled that Bankruptcy Courts, under [section 105], may extend the

automatic stay to 'enjoin suits by third parties against third parties if they threaten

to thwart or frustrate the debtor's reorganization efforts.'") (citation omitted).

    In the face of this authority, Lane argues that the court lacks power to issue

an injunction extending the automatic stay pursuant to section 105 of the Code

because "the law is clear that such an order would exceed the permissible scope

of the automatic stay under 11 U.S.C. § 362 (a)."  Response at 9.  While this may

be true if one were to analyze the limits of section 362 on its own - as Lane does

16

in her Response Brief - it is not the case when one considers, as discussed

above, the power that the bankruptcy court has under section 105 to expand the

automatic stay to non-debtor parties.  In fact, none of the cases that Ms. Lane

cites in her Response Brief bases its decision on or discusses at length section

105 of the Code.  See e.g., Maritime Electric Co., Inc., 959 F.2d 1194 (3d Cir.

1991) (holding that the automatic stay of section 362(a) only applies to

proceedings against a debtor, not addressing section 105, but noting that the

"automatic stay may be extended to non-bankrupt codefendants in unusual

circumstances") (citing A.H. Robins Co., Inc., v. Piccinin, 788 F.2d 994, 999 (4th

Cir.)); In re Miller, 262 B.R. 499 (9th Cir. 2001) (holding that the automatic stay

did not preclude the debtor from participating in discovery requests pertaining to

claims against non-debtor defendant and basing decision on section 362 of the

Code only); In re Hillsborough H'ldgs. Corp., 130 B.R. 603, 606 (Bankr. M.D. Fla.

1991) (granting Chapter 11 debtor's co-defendant relief from the automatic stay

to conduct discovery while noting "there is no doubt that a debtor might obtain the

relief sought by seeking injunctive relief based on § 105 of the Code[.]"); Peter

Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd., 2004 WL

2973822 (N.D. Ill. Nov. 30, 2004) (failing to discuss section 105).

    In her Sur-Reply Brief, Ms. Lane does respond to the argument regarding a

court's power under section 105 of the Code, and contends that "in granting relief

pursuant to Section 105, the Court is limited with respect to the extension of the

17

automatic stay to the scope of permissible relief under Section 362." Sur-Reply

at 3. Lane argues both that a bankruptcy court cannot use its power under

11 U.S.C. § 105 to *expand* the scope of Section 362, and that, as she points out

in her Response Brief, Section 362 is limited to actions against a debtor.

In making this argument, Lane points to Judge Robreno's opinion affirming

this Court's granting of the May 8th preliminary injunction (In re Philadelphia

Newspapers, LLC, ___, B.R. ___, 2009 WL 1911785, at *6 (E.D. Pa. July 2,

2009), and also to a case cited in Judge Robreno's opinion, namely In re

Combustion Eng'g, Inc., 391 F.3d. 190 (3d Cir. 2004). However, neither of these

cases stands for the proposition that Ms. Lane asserts.[11] While it is true that the

Third Circuit recognizes that "the general grant of equitable power contained in

§ 105 cannot trump specific provisions of the Bankruptcy Code, and must be

exercised within the parameters of the Code itself," Combustion Engineering

holds only that "105 does not provide an independent source of federal subject

matter jurisdiction" and that "§ 105(a) cannot be used to achieve a result not

contemplated by the more specific provisions of § 524(g)." In re Combustion

Eng'g, Inc., 391 F.3d. 190, 225, 237 (3d Cir. 2004). In fact, the Third Circuit

specifically declines to make the sweeping generalization about the viability of

Section 105 injunctions that Ms. Lane characterizes. Id. ("Whatever may be the

---

[11] Ms. Lane also misreads In re Adelphia Communications Corp., 294 B.R. 39 (Bankr. S.D.N.Y. 2003). Contrary to the assertion of Ms.Lane, that case does specifically acknowledge that a bankruptcy court has "power . . . under . . . Bankruptcy Code section 105(a), to stay discovery from parties and non-parties alike." Id. at 44.

limits of § 105(a) in other contexts . . .").  Moreover, as discussed, Judge Robreno

recognizes "the power of the Court to stay actions against Non-Debtors, pursuant

to section 105(a)" as being "clear."    In re Philadelphia Newspapers, LLC, ____,

B.R. ___, 2009 WL 1911785, at *6 (E.D. Pa. July 2, 2009).[12]  Therefore, Ms. Lane

fails to cite any case which contradicts the settled law, discussed above, which

establishes that a bankruptcy court has power under section 105 to extend the

automatic stay to non-debtor third parties.


***When is it Proper for a Court to Issue an Injunction Staying Third Party
Litigants Pursuant to Section 105?***

According to some cases, it is proper for a Court to issue an injunction to

third party non-debtors and extend the 362 stay using its power under section

105 of the Code when "there is such identity between the debtor and the third-

party defendant that the debtor may be said to be the real party defendant and

that a judgment against the third-party defendant will in effect be a judgment

against the debtor."    In re American Film Technologies, Inc., 175 B.R. 847, 851

(Bankr. D. Del 1994) (citing A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999

(4th Cir. 1986) (which also discussed the presence of "unusual circumstances" in

---

[12] The discussion of Combustion Engineering in the District Court's opinion comes in the
discussion of subject matter jurisdiction rather than in the discussion of the court's power to issue an
injunction.  In re Philadelphia Newspapers, LLC, ___, B.R. ____, 2009 WL 1911785, at *2 (E.D. Pa. July 2,
2009).

such cases)).  See also Smith v. Dominion Bridge Corp., 1999 WL 111465, at *4

(Bankr. E.D. Pa. Mar. 2, 1999).

However, another line of cases recognizes that even where "it cannot be

said that there is such identity between the debtor and the third-party defendant

that a judgment against [the third-party defendant] would in effect be a judgment

against [the Debtor]," it may be proper for a court to issue a 105 injunction.  In re

A.H. Robins Co., Inc., 828 F.2d 1023, 1025 (4th Cir. 1987).  See also In re

Johns-Manville Corp., 26 B.R. 420, 425 (S.D.N.Y. 1983), *vacated in part,* 41 B.R.

926 (S.D.N.Y. 1984) ("A bankruptcy court may use its equitable powers to issue

injunctive relief against proceedings in other courts when the bankruptcy court is

satisfied that such a proceeding would either defeat or impair its jurisdiction with

respect to a case pending before it").  In re Monroe Well Service, Inc., 67 B.R.

746, 751 (Bankr. E.D. Pa. 1986) (citations omitted), cites a number of examples

of cases in which injunctions against non-debtors pursuant to 11 U.S.C. § 105

have issued for reasons such as "to restrain actions against a principal of the

debtor upon a showing that the non-debtor's time, energy and commitment to the

debtor are necessary for the formulation of a reorganization plan...[or that] harm

to the estate may occur due to the impact of collateral estoppel...It might also

result from the existence of an indemnification agreement between the debtor

and the non-debtor."  Whether or not to enjoin non-debtors pursuant to section

105 of the Code is a matter of a bankruptcy judge's discretion.  In re Philadelphia

Newspapers, LLC, ___, B.R. ___, 2009 WL 1911785, at *6 (E.D. Pa. July 2,

2009).


### *A Reciprocal Injunction is in the Best Interest of the Estate Here*

Either standard noted above is met in this case.  The Debtors and the third

party-defendants in the underlying adversaries (the Debtors' editors, reporters,

and employees) do have an identity of interest such that the Debtors can be said

to be the real party defendant.[13]  Because the Newspapers indemnify their

employees, each piece of litigation costs the company time, money, and effort.

This case, a large and complex Chapter 11 with many employees being sued,

presents the unusual circumstance of a Debtor needing the time and space of a

§ 105 injunction extended to non-debtor employees.  The Court also remains

mindful of the possible effect of collateral estoppel if one-sided litigation is

permitted to proceed.

Moreover, key employees (Mr. Baker and Mr. Tierney) would be diverted

from their reorganization efforts if the underlying litigation were not stayed

completely as it relates to the Debtors.  For example, if, as Mr. Rosen desires,

---

[13] This is so primarily because the Debtors are indemnifying its employees in the litigation.  As previously mentioned, the Court finds it unnecessary to interpret the Debtors' Amended and Restated Operating Agreement.  Whether or not this document provides a basis for indemnification is not essential to this analysis.  As the District Court discussed, there are possible other bases for indemnification.  In re Philadelphia Newspapers, LLC, ____, B.R. ___, 2009 WL 1911785, at *4 (E.D. Pa. July 2, 2009).  See also July Tr. at 74 (Mr. Baker testifying that "I think it would be very difficult to retain reporters if you were told that you had to provide your own defense if you ever were sued.").

discovery (and perhaps motion practice) continued with regard to Mr. Gross (an

employee of one of the Debtors), it would take up the time and energy of

Mr. Baker, the General Counsel of the Debtors.[14]  And if Mr. Rosen is permitted to

conduct discovery in his case against non-debtor defendants, why shouldn't the

other litigants in these adversary proceedings receive the same privilege?  The

cumulative effect and drain on the Debtors of handling such discovery and motion

practice could be enormous.

Many courts, analyzing the same potential harm, have enjoined non-

debtors from participating in litigation so that debtors could focus on

reorganization rather than have their key employees be distracted by extraneous

litigation.  See e.g.  In re Eagle-Picher Industries, Inc., 963 F.2d 855, 860 (6th Cir.

1992) (staying state court action against Debtor's officers pursuant to the court's

power under section 105 of the Code and noting that "proceeding with the Texas

action will needlessly divert key employees from the debtor's reorganization

effort.");  In re A.H. Robins Co. Inc., 828 F.2d 1023, 1026 (4th Cir. 1987) ("[the

debtor] will inexorably be drawn into this litigation.  Because this involvement will

put a substantial burden on [the debtor], it will detract from the reorganization

process. We therefore hold that under section 105, the court had authority to stay

these actions.");  In re Loewen Group, Inc. Sec. Litig., 2001 WL 530644, at *3

---

[14] Ms. Lane argues that Mr. Gross is not essential to the Debtor's reorganization.  Sur-Reply at 15-6.  This may be so, but it is not the issue.  The question is the diversion of *Mr. Baker* if he is called away from the Debtors' reorganization efforts to deal with the Lane Case and other litigation matters.

(E.D. Pa. May 16, 2001) (extending the stay to Debtor's officers and directors who were non-debtor defendants in litigation in order to prevent the Debtor from engaging in "detailed and burdensome discovery"); Smith v. Dominion Bridge Corp., 1999 WL 111465, at *4 (Bankr. E.D. Pa. Mar. 2, 1999) (staying discovery in class action during debtor's reorganization); In re Adelphia Communications Corp., 302 B.R. 439, 452 (Bankr. S.D.N.Y. 2003) (staying discovery in pending third party litigation to prevent, in part, "the risk of . . . threat to a successful reorganization").  Likewise, the Court will extend the automatic stay of 11 U.S.C. § 362 to Non-Debtors in the underlying litigation pursuant to its power under § 105 of the Code.  Both the May 8th and the July 6th Orders will be modified to make clear that the preliminary injunctions apply to Non-Debtors as well as to Defendants.

The Court is not without sympathy for Mr. Rosen's (and other litigant's) frustration at the possible delay that this may cause.  However, the Court has weighed the harms and concluded that, as with the analysis of the preliminary injunction, given that the time-period is brief and the potential burden to these Debtors large, the hardship weighs in favor of the Debtors here.  And given that the Debtors have provided no sign that they will not emerge from this Chapter 11, the Court must allow them any possible breathing room.  Temporary freedom from the burdens of litigation is one such allowance that the Court can and will

23

provide.  It is unfortunate that such a privilege of bankruptcy comes at the

expense of litigants such as Ms. Lane.

## III. CONCLUSION

For the reasons discussed, the Motion of the Debtors for Clarification of

Scope of Preliminary Injunction (which will be treated as a Motion for

Reconsideration of the May 8th and July 6th Orders) shall be granted.  The Court

finds that the relief sought by the Debtors, namely to insure that they will not be

distracted by discovery or other burdens of litigation, is both reasonable and

entirely consistent with the purpose of the preliminary injunctions issued by this

Court.  Therefore, the May 8th and July 6th Orders will be modified to reflect that

the injunctions apply to the Defendants in this adversary as well as to the Non-

Debtors.  An appropriate order will follow.


Dated: August 5, 2009.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge